IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FLOWSERVE CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1357-N |
| | § | |
| MIDWEST PIPE REPAIR, L.L.C. and | § | |
| DAVID DRAGO, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Amended Motion to Dismiss or Transfer, filed August 11, 2005. Because exercise of specific personal jurisdiction in Texas over nonresident Defendants does not violate due process, the motion to dismiss is denied. Because venue in Texas is proper and transfer is unwarranted, the motion to transfer is also denied. Further, because of the above rulings, Defendant's Motion to Dismiss or Transfer, filed July 13, 2004, is dismissed as moot.

### I. FACTS UNDERLYING THE ALLEGED MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

Defendant David Drago is a former employee of Plaintiff Flowserve Corporation ("Flowserve").[1] Drago is currently employed by Defendant Midwest Pipe Repair, L.L.C.

---

[1] As indicated below, the Court takes as true Flowserve's allegations for purposes of this motion.

MEMORANDUM OPINION AND ORDER – PAGE 1

("Midwest Pipe"), which he co-founded. Drago resigned from Flowserve in May of 2005 and soon after formed Midwest Pipe along with several other former Flowserve employees.

Flowserve alleges the following facts in its complaint. While Drago was their employee, he had access to Flowserve's secure, web-based computer network and the confidential, proprietary, and trade-secret sales, marketing, design, and engineering information contained therein (collectively hereafter referred to as "Confidential Information"). Drago entered into confidentiality agreements with Flowserve pertaining to this information. Prior to leaving Flowserve's employ, Drago solicited Flowserve customers via email on behalf of Midwest Pipe. Additionally, Drago, after resigning and while in the employ of Midwest Pipe, used his username and password to access the Confidential Information on Flowserve's secure network, which Drago and Midwest Pipe subsequently used to harm Flowserve's business.

Flowserve filed this lawsuit in Dallas County, Texas alleging thirteen claims including misappropriation of trade secrets and conversion. Defendants removed to this Court. Defendants bring this motion seeking dismissal for lack of personal jurisdiction, or, in the alternative, transfer of venue.

## II. PERSONAL JURISDICTION OVER DRAGO AND MIDWEST PIPE EXISTS IN THE STATE OF TEXAS

### A. Well-known Legal Standards for Personal Jurisdiction Apply

The legal standards for exercise of personal jurisdiction are well-known:

In a diversity action, a federal court may exercise personal jurisdiction over a defendant only to the extent permitted by the applicable law of the forum state. *See* FED. R. CIV. P. 4(e)(1), (h)(1), and (k)(1). It is well-established that the

> Texas long-arm statute authorizes the exercise of personal jurisdiction to the full extent allowed by the Due Process Clause of the Fourteenth Amendment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 1997); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990).
>
> The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Exercising personal jurisdiction over a nonresident defendant is consistent with constitutional due process when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir.1999) (quoting *International Shoe Co.*, 326 U.S. at 316 (1945)). "'Minimum contacts' can be established through either contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Id.*; *Alpine View*, 205 F.3d at 215. When a nonresident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," the defendant's contacts are sufficient to support the exercise of specific jurisdiction over that defendant. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted).

*Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003).

> "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts[.]" [*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)]; *see also Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990); *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270-71 (5th Cir. 1983). Therefore, the plaintiff need only present a prima facie case of personal jurisdiction to satisfy its burden. *See Bullion*, 895 F.2d at 217.

*Stripling v. Jordan Production Co.*, 234 F.3d 863, 869 (5th Cir. 2000).

## B. Drago and Midwest Pipe Have Sufficient Minimum Contacts
## to Support Personal Jurisdiction

Defendants' motion to dismiss asks the Court to determine whether it has personal jurisdiction over Defendants. The Court will first determine whether Defendants had established minimum contacts with Texas. Flowserve does not claim general personal jurisdiction, thus the Court focuses its inquiry on the activities of the Defendants that specifically resulted in this litigation. *Burger King*, 471 U.S. at 472. Taken in the light most favorable to Flowserve, Drago had the following alleged contacts with Texas: (1) Drago entered into a confidentiality agreement with Flowserve regarding Confidential Information; (2) Drago repeatedly accessed data and email servers located in Texas for the purpose of misappropriating Confidential Information for use by Midwest Pipe; (3) Drago utilized Flowserve's Texas email servers to improperly solicit Flowserve customers for Midwest Pipe; and (4) Flowserve, located in Texas, suffered injury as a result of these acts. Also, more generally, when the alleged acts occurred: (1) Drago had worked for Flowserve and signed an acknowledgment of having read Flowserve's Code of Conduct, which addressed handling of Confidential Information; (2) Drago knew Flowserve's headquarters were located in Texas; (3) Drago had accessed both email and data servers located in Texas throughout his employment with Flowserve; and (4) Drago and other former Flowserve employees were agents of Midwest Pipe.

The role technology plays in this case's facts may make this determination seem less straightforward than other, more traditional cases.[2] Both sides agree that when Drago allegedly misappropriated Flowserve's Confidential Information, he did so from a computer not located in Texas, using the internet and Flowserve's secure, web-based network. Parties also agree that while working for Flowserve Drago serviced an area outside of Texas centering on St. Louis, Missouri, and neither Drago nor Midwest Pipe have operations in Texas.

However, courts have long-established that a defendant need not physically conduct an act in a state in order to be subject to the state's personal jurisdiction. *Burger King*, *Corp.*, 471 U.S. at 476 (1985); *see generally Calder v. Jones*, 465 U.S. 783 (1984). The Court also notes "that the defendants 'should not be permitted to take advantage of modern technology' via the Internet or other electronic means to 'escape traditional notions of jurisdiction.'"

---

[2]Interestingly, this case's facts also make it different in important ways from recently established cases deciding personal jurisdiction and the internet. Most significantly, many courts, including this one, have utilized a spectrum that distinguishes personal jurisdiction in internet cases based on the interactivity of the format in which information is provided (usually on a website). *See, e.g., CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263-65 (6th Cir. 1996); *Zippo Mfg. Co. Zippo Dot Com, Inc.* 952 F. Supp. 1119, 1124-27 (W.D. Pa. 1997); *Poly-America, L.P. v. Shrink Wrap Int'l.*, No. 3:03-cv-1556, 2004 U.S. Dist. LEXIS 7875, a *6-11(N.D. Tex. April 23, 2004). It is important to note, however, that courts have developed and applied this scale largely to determine personal jurisdiction over the party providing the information (i.e., where the party providing information was the defendant.)

Here, the Court seeks to determine personal jurisdiction over the party seeking and/or receiving the information, making the applicability of the spectrum framework questionable. *See, e.g., Peridyne Tech. Solutions LLC v. Matheson Fast Freight, Inc.*, 117 F. Supp. 2d 1366 (N.D. Ga. 2000) (abstains from using *Zippo* spectrum where defendant does not use internet to distribute information); *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244 (10th Cir. 2000) (same); *Verizon Inline Services, Inc. v. Ralasky*, F. Supp. 2d 601 (E.D. Va. 2002) (same).

MEMORANDUM OPINION AND ORDER – PAGE 5

*Peridyne Tech.*, 117 F. Supp. 2d at 1371 (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997)). Instead, the essential inquiry remains whether the defendant must "reasonably anticipate being haled into court there." *Calder*, 465 U.S. at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Courts generally utilize the *Calder* "effects" test to determine when the defendant's acts are sufficient that they should reasonably anticipate being subject to litigation in a forum. That test contains three parts: (1) that defendant performed intentional, tortious acts outside the forum state; (2) that the acts were directed at the forum state; and (3) that the acts had foreseeable effects on the plaintiff in the forum state. *Calder*, 465 U.S. at 789-790; *Brokerwood Prods. Int'l, Inc. v. Cuisine Crotone, Inc.*, 104 Fed. Appx. 376, 382 (5th Cir. 2004); *Bancroft & Masters, Inc. v Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

Here, Drago's acts meet each element of this test. While using computers in Missouri, Drago aimed his alleged misappropriation of Confidential Information at servers located in Texas. Also, Drago and Midwest Pipe knew or should have known that misappropriating this information would cause harm to Flowserve. Although Flowserve may experience some impact from the misappropriation in Missouri, where it competes with Midwest Pipe, the injury resulting from the misappropriation itself occurs in Texas. Flowserve stored its Confidential Information in Texas, the misappropriation occurred in Texas, and Flowserve's rights in the information were violated in Texas.

Defendants argue that the presence of Flowserve's data servers in Dallas is a mere fortuity. This may conceivably be the case if the acts from which the claims arise did not

MEMORANDUM OPINION AND ORDER – PAGE 6

directly involve the servers or the server resided in a forum state unrelated to Flowserve's business. Here, however, the servers play a substantial role in Flowserve's claims and reside, as might be expected, in the same forum state as Flowserve's headquarters. Further, the claims do not arise from a singular act; Flowserve alleges that Drago accessed their Confidential Information on multiple occasions while working for Midwest Pipe. *See Intercon*, 205 F.3d at 1246 (repeated unauthorized access of plaintiff's Oklahoma servers created personal jurisdiction in Oklahoma). This goes well beyond a mere fortuity.[3]

The number and nature of Defendants' contacts with Texas establish both that the Defendants purposefully directed their conduct toward this forum and that this litigation results from alleged injuries that arise out of or relate to that conduct. Accordingly, Defendants have sufficient minimum contacts with Texas for personal jurisdiction.

### *C. The Exercise of Jurisdiction Over Drago and Midwest Pipe Does Not Offend Traditional Notions of Fair Play and Substantial Justice*

This Court's exercise of jurisdiction over the Defendants also comports with due process. The due process inquiry limits a court's power to exercise personal jurisdiction over a nonresident if the exercise of jurisdiction under the circumstances would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. In determining

---

[3] To support their position Defendants cite *Pres-Kap, Inc. v. System One, Direct Access, Inc.*, 636 So.2d 1351 (Fla. Dist. Ct. App. 1994). However, *Pres-Kap* involves a breach of contract claim in which there is no indication that the New York defendant reasonably expected to be subject to Florida jurisdiction. Two parties operating out of New York formed the contract, removing a Florida forum selection clause that had previously existed. *Id.* at 1352. Further, the defendant did not direct the act that led to the claim (breach via cessation of payment) at Florida. *Id.*

whether the exercise of jurisdiction violates traditional notions of fair play and substantial justice, the court evaluates the following factors: (1) the burden on the defendant by having to litigate in the forum; (2) the forum state's interests in the lawsuit; (3) the plaintiff's interests in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of states in furthering fundamental social policies.  *Wien Air Alaska v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

First, the burden on the Defendants of having to litigate in Texas is significant, but not dispositive.  Defendants routinely travel over a large area as part of their business and Midwest Pipe's customers that may need to testify do not necessarily live in Missouri or another single venue.

Next, Texas has a substantial interest in redressing interests of its resident businesses.  Texas-based companies rely on the state's protection of information they store in the state.  That reliability of that protection is enhanced if it is consistent, not dependent on the site from which misappropriation efforts are based.

The Plaintiff's interest clearly weighs toward allowing them to select their forum, as forcing Flowserve to bring Dallas witnesses to Missouri would not advance their interest in convenient and effective relief.  Similarly, jurisdiction in Texas advances judicial interests both by efficiently continuing the present case and by resolving suits for tortious acts near where the acts were directed and felt.

Finally, the shared interests of the states favor a Texas forum.  Defendants argue that Flowserve's claims constitute only harassment; however, at this stage Flowserve makes the

requisite *prima facia* case and both states share an interest in preventing the conduct alleged. Accordingly, traditional notions of fair play and substantial justice are met and jurisdiction over Defendants comports with due process. Defendants' motion to dismiss is denied.

### IV. WITH PERSONAL JURISDICTION ESTABLISHED, INSUFFICIENT BASIS EXISTS TO TRANSFER VENUE

Defendants ask that, pursuant to 28 U.S.C. § 1404(a), this Court transfer the case to the Eastern District Missouri, even if personal jurisdiction exists. Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The legal standard for transfer under section 1404(a) is well-known:

> In making a determination of whether a motion to transfer venue is proper, we turn to the language of § 1404(a), which speaks to the issue of "the convenience of parties and witnesses" and to the issue of "in the interest of justice." The determination of "convenience" turns on a number of private and public interest factors, none of which are given dispositive weight. *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.*, 358 F.3d 337, 340 (5th Cir.2004) (citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir.1986)). The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.*

*In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

Further, "it is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered but in and of itself it is neither conclusive nor determinative." *In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003) (citing *Garner v. Wolfinbarger*, 433 F.2d 117, 119 (5th Cir. 1970)).

> [C]ourts generally concur that there is a strong presumption favoring plaintiff's choice of forum. Since enactment of 28 U.S.C. § 1404(a), the amount of weight courts confer on plaintiff's choice of forum has been somewhat obscure:
>> [C]ourts have developed a bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum. Some courts say . . . that it is the paramount or primary consideration. . . . Other cases take a less than enthusiastic view of the weight to be given plaintiff's choice . . . [where plaintiff] chooses a forum with no obvious connection to the case.
>
> 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3848 (1986) (footnotes omitted). In any event, it is safe to say that ordinarily plaintiff's choice of forum is given significant weight and will not be disturbed unless the other factors . . . weigh substantially in favor of transfer.

*Robertson v. Kiamichi R.R. Co, L.L.C.*, 42 F. Supp. 2d 651, 655-56 (E.D. Tex. 1999) (footnote omitted).

The private concerns weigh in favor of neither Texas nor Missouri. Both states are home to proof and witnesses, as may be several other states served by Defendants. Little or no net gain would be achieved by transferring venue to Missouri and a district court will not transfer any case where the practical effect merely shifts inconveniences from the moving party to the non-moving party. *Sanders v. State St. Bank & Trust Co.*, 813 F. Supp. 529, 535 (S.D. Tex. 1993); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).

The public concerns weigh in favor of Texas. Concerns regarding administrative difficulties and conflict of laws are neutral. Keeping venue in Texas best serves the other concerns of deciding localized interests locally and the forum's familiarity with the law. Flowserve's complaint alleges violations of Texas law and the act and injury both occurred in Texas. The plaintiff's choice of forum strongly favors Texas. For reasons outlined above, Defendants have not established that either the convenience of the parties or the interests of justice warrant transfer. Accordingly, Defendants' motion to transfer venue is denied.

Signed February 3, 2006.

_____
David C. Godbey
United States District Judge